NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No. 05-11089/JHW |
| | | Case No. 05-11090/JHW |
| Showtime Enterprises, Inc. | : | |
| Showtime Enterprises West, Inc. | | |
| | : | |
| Debtors | | |
| | : | |
| Linda L. McMackin, Trustee | | Adver. No. 06-2552/JHW |
| | : | |
| Plaintiff | | |
| v. | : | |
| | | |
| Willwork, Inc. | : | |
| Defendant | | |
| _____ : | | |

PARTICIPANTS:   Ari D. Linden, Esq.
Weinberg, McCormick, Chatzinoff & Zoll
109 Haddon Avenue
Haddonfield, New Jersey 08033
Attorney for Plaintiff

Scott M. Zauber, Esq.
Subranni, Ostrove & Zauber
1624 Pacific Avenue
P.O. Box 1913
Atlantic City, New Jersey 08404
Attorney for Defendant

**FILED**
JAMES J. WALDRON, CLERK

December 3, 2007

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Theresa O'Brien, Judicial Assistant
to Chief Judge Wizmur Wizmur

In this adversary proceeding, the Chapter 7 Trustee seeks to recover $15,229.50 in allegedly preferential payments made from Showtime Enterprises West, Inc. to Willwork, Inc. The trustee has filed a motion for summary judgment, and the defendant has responded with its own cross

motion for summary judgment seeking dismissal of the complaint.

## **FACTS AND PROCEDURAL HISTORY**

The debtor,[1] Showtime Enterprises West, Inc., filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on January 12, 2005[2]. The debtor's Chapter 11 case was converted to Chapter 7 on June 8, 2007.

The debtor was in the business of designing, manufacturing, installing, servicing and storing trade show and museum exhibits, point of purchase displays and other event related displays. The debtor employed the services of defendant Willwork to produce shows. During the relationship between the parties, the debtor defaulted in payment to the defendant for services rendered. The record reflects the following debt due from the debtor to the defendant during the relevant timeframe:

---

[1] The cases of the two debtors, Showtime Enterprises, Inc. and Showtime Enterprises West, Inc., were substantively consolidated on March 1, 2007. Both cases were converted to Chapter 7 on June 8, 2007. This complaint was filed by the trustee for the debtor Showtime Enterprises West.

[2] The case was filed under Chapter 11 of the U.S. Bankruptcy Code before the enactment of the 2005 BAPCPA amendments. The Code, as it existed prior to new 2005 amendments, is applicable here. See In re Fruehauf Trailer, Corp., 444 F.3d 203, 210 n.4 (3d Cir. 2006); In re Cruz, No. 05-45916, 2006 WL 4457336, *2n.1 (Bankr. D.N.J. July 26, 2006).

  As of June 9, 2004          $257,964.00
  As of June 15, 2004         $269,925.00
  As of July 21, 2004          $ 13,523.00
  As of November 1, 2004       $244,402.11
  As of November 30, 2004      $310,946.71
  As of January 12, 2005        $298,219.22

On November 23, 2004, the debtor issued a check to the defendant in the amount of $15,229.50 for the following back invoices:

  Invoice 4432 - 6/14/04 - $ 9,278.00
  Invoice 4487 - 6/9/04 - $1,273.50
  Invoice 4600 - 7/21/04 - $4,678.00

The check was cashed by the defendant on December 23, 2004. Shortly thereafter, on January 12, 2005, the debtor filed a Chapter 11 petition.

  The trustee contends that the payment to the defendant on November 23, 2004, made within 90 days of the filing of the petition, is voidable as a preference under 11 U.S.C. § 547(b). The defendant counters that the trustee has failed to satisfy all five prongs of the preference statute. As well, the defendant relies on two exceptions to preference avoidance, including § 547(c)(1) (contemporaneous exchange for new value), and § 547(c)(4) (new value), to argue that the payment made by the debtor within the 90-day period prior to filing, on account of an antecedent debt, should not be avoided.

**DISCUSSION**

At issue here is whether the trustee has established the requisite five elements for avoidance of a transfer under 11 U.S.C. § 547(b), and, if so, whether the transfer falls within one of the exceptions to avoidable transfers under § 547(c).

    A.    <u>Preferential Transfer - Section 547(b)</u>.

The preference rules are designed to ensure that creditors are treated equitably and to encourage creditors to continue to deal with distressed debtors. <u>In re Molded Acoustical Products, Inc.</u>, 18 F.3d 217, 219 (3d Cir. 1994). "The preference statute, by allowing the estate to recover in full--for the benefit of all the unsecured creditors--assets which a pushy unsecured creditor unilaterally plucked for itself or which a fawning debtor used in an irregular transaction to advantage a favored creditor, seeks to foreclose these tragedy-of-the-common type responses to a struggling business." <u>Id</u>. at 223. "The preference provisions are designed not to disturb normal debtor-creditor relationships, but to derail unusual ones which threaten to heighten the likelihood of the debtor filing for bankruptcy at all and, should that contingency materialize, to then disrupt the paramount bankruptcy policy of

the equitable treatment of creditors." Id. at 224.

Section 547(b) of the Bankruptcy Code permits a trustee to avoid a prepetition transfer[3] made:

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made –
>     (A) on or within 90 days before the date of the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if --
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). See Union Bank v. Wolas, 502 U.S. 151, 154-55, 112 S. Ct. 527, 529-30, 116 L.Ed.2d 514 (1991); In re First Jersey Securities, Inc., 180

---

[3] A "transfer" is defined under section 101 as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54).

F.3d 504, 509-10 (3d Cir. 1999).  The burden is on the trustee to prove each of the five elements in order to avoid a preferential transfer.  11 U.S.C. § 547(g).  Debtor's intent or motive is not an element under the preferential transfer statute.  In re Cobb, 231 B.R. 236, 241 (Bankr. D.N.J. 1999).

In this case, the only elements that the parties dispute are whether the debtor was insolvent at the time that the transfers were made, and whether the defendant received more than it would have received in a Chapter 7 liquidation.

    1.    <u>Insolvency</u>.

Under the Bankruptcy Code, "insolvent" means a:

> financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of --
>
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A).  The definition represents a balance sheet test, designating the debtor as insolvent if its liabilities exceed its nonexempt assets.  Pursuant to section 547(f), "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the

petition." 11 U.S.C. § 547(f).  See Wolas, 502 U.S. at 155, 112 S. Ct. at 530. This presumption shifts the burden of going forward, but not the burden of proof.  The burden of proof remains with the trustee to establish this element of § 547(b).  11 U.S.C. § 547(g).  In re Zeta Consumer Products Corp., 291 B.R. 336, 347 (Bankr. D.N.J. 2003).

The party challenging an avoidance action to rebut the presumption of insolvency must offer "non-speculative evidence that is sufficient to permit a court to conclude that the debtor was indeed solvent at the time of the transfer." In re CVEO Corp., 327 B.R. 724, 729 (Bankr. D. Del. 2005).  See also In re Brothers Gourmet Coffees, Inc., 271 B.R. 456, 458 (Bankr. D. Del. 2002). When a creditor fails to offer any evidence to meet or rebut the presumption of insolvency then the trustee is entitled to rely upon the presumption of insolvency in its favor. See In re DAK Industries, Inc., 170 F.3d 1197, 1200 n 1 (9th Cir. 1999); In re Emerald Oil Co., 695 F.2d 833, 838 (5th Cir. 1983); In re Allegheny Health, Education and Research Foundation, 292 B.R. 68 (Bankr. W.D. Pa. 2003).  The trustee is under no obligation to bring forth evidence in support of the debtor's insolvency until the defendant comes forth with evidence to rebut the presumption of insolvency.  Moreover, the evidence must be more than mere allegation that the debtor was solvent. See In re I.M. Import & Export, Inc., No. 99-16835, 2001 WL 214026, *4 (Bankr. S.D. Fla., Feb. 27,

2001); In re Molded Acoustical Products, Inc., 150 B.R. 608, 614 (E.D.Pa.1993), aff'd, 18 F.3d 217 (3rd Cir.1994); In re Ajayem Lumber Corp., 145 B.R. 813, 817 (Bankr. S.D.N.Y. 1992).  Summary judgment will be granted to a trustee if the defendant "fails to rebut the presumption of insolvency "or when there is no genuine issue of material fact concerning insolvency and the trustee is entitled to judgment as a matter of law." Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp., 158 F.3d 312, 315 (5th Cir. 1998).  Here, the defendant has failed to offer any competent evidence to rebut the section 547(f) presumption.  No genuine issue of material fact concerning insolvency exists, and the trustee is entitled to rely on the presumption.

Even if the presumption of insolvency had been successfully rebutted by the defendant, the trustee has met his burden of proof to establish that the debtor was insolvent at the time of the transfers.  The trustee relies on the unrefuted Summary of Schedules filed by both debtors in January 2005, which reflects that the liabilities of each debtor substantially exceed the assets of each debtor. As well, the liabilities of the two consolidated debtors substantially exceed the combined assets of the debtors.  The trustee has clearly shown the debtors' insolvency here, and the defendant's insolvency defense is rejected.

### 2. Creditor Receives More than if the Transfer had not Occurred.

As noted, the fifth element of an avoidable preference payment is that, as a result of the transfer, the creditor received more than such creditor would have received if the case were a case under Chapter 7, the transfer had not been made, and the creditor had received a dividend with other unsecured creditors. In re Kiwi Intern. Air Lines, Inc., 344 F.3d 311, (3d Cir. 2003); Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 644 n. 2 (3d Cir. 1991), cert. denied, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed. 2d 620 (1992). A court must compare "what the creditor actually received and what it would have received under the chapter 7 distribution provisions of the Code" for a determination of whether the creditor actually received more than its fair share. 5 Lawrence P. King, Collier on Bankruptcy, ¶ 547.03[7] at 547-44 (15th Ed. Rev. 2007).

Here, the only indicators of potential distribution to unsecured creditors if a Chapter 7 had been filed on January 12, 2005 are the schedules filed by the debtors. The Summary of Schedules for each debtor, both individually and on a consolidated basis, show that the debt securing all of the debtors' assets substantially exceeded the value of the debtors' assets, leaving nothing to distribute to unsecured creditors.

The trustee opines here that, most likely, there will be no distribution to unsecured creditors. During the Chapter 11 portion of the case, sale of the debtors' assets produced partial satisfaction of the secured claims, with a carve out of $100,000 for professional administrative expenses, and a claims allowance of $150,000. The Chapter 7 trustee recites that approximately $145,000 in outstanding Chapter 11 professional administrative expenses remain, along with an administrative obligation on account of a New Jersey corporate tax in the amount of $107,319. In addition, Chapter 7 professional administrative expenses must be paid. These numbers are not disputed by the defendant. The trustee has established that the defendant, by receiving $15,229.50 within the preference period, received more than the creditor would have received if the transfer had not been made.

I conclude that the five elements of a preference action under 11 U.S.C. § 547(b) have been established.

B.    Exceptions to the Preference Rule.

Even if the trustee has established the requisite elements for avoidance of a transfer under section 547(b), a transfer will not be avoided if the defendant can establish any one of the exceptions provided for under section

10

547(c). At issue here are the contemporaneous business exception under section 547(c)(1), and the new value exception under section 547(c)(4).

    1.    <u>Contemporaneous Exchange - Section 547(c)(1)</u>.

The defendant contends that the transfer in question is excepted from the movant's preferential claim because it qualifies as a "contemporaneous exchange" as provided by section 547(c)(1).

Section 547(c)(1) provides:

> (c) Trustee may not avoid under this section a transfer -
>     (1) to the extent such transfer was -
>         (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>         (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

To satisfy this exception, the defendant must prove three elements: (i) that the transfer was for new value given to the debtor; (ii) that the transfer was intended to be a contemporaneous exchange, and (iii) that the transfer was in fact a substantially contemporaneous exchange. 11 U.S.C. § 547(c)(1); <u>see also</u> <u>In re Shelton Harrison Chevrolet, Inc.</u>, 202 F.3d 834, 837 (6th Cir. 2000); <u>In re</u>

Lewellyn & Co., Inc., 929 F.2d 424, 429 (8th Cir. 1991); Computer Personalities Sys., Inc. v. Aspect Computer, 320 B.R. 812, 818-19 (E.D. Pa. 2005); In re Molten Metal Tech., Inc., 262 B.R. 172, 176 (Bankr. D. Mass. 2001).

The section 547(c)(1) exception fails here because the transfer was not intended to be a contemporaneous exchange, and was not in fact a substantially contemporaneous exchange. The payment forwarded by the debtor to the defendant on November 23, 2004, in the amount of $15,229.50, was applied to satisfy outstanding invoices. Even if the defendant offered new value to the debtor after the payment was made, that type of exchange does not qualify for the contemporaneous exchange exception. Courts have generally agreed that a payment applied to a past debt in exchange for new value does not fall within section 547(c)(1). See In re Computer Personalities Systems, Inc., 320 B.R. 812, 818 (E.D. Pa. 2005); In re Git-N-Go, Inc., No. 04-10509, 2007 WL 2816215, *8 (Bankr. N.D. Okla. Sep. 25, 2007); In re Advance Glove Mfg. Co., 42 B.R. 489, 493 (Bankr. E.D. Mich. 1984). There is no genuine issue of material fact concerning the payment by the debtor on account of past due invoices, rather than as a contemporaneous exchange for new value. The defendant's defense in this regard is rejected.

2.   New Value - 547(c)(4).

Lastly, the defendant contends that the payment is excepted from avoidance as a preference under section 547(c)(4).

Section 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer --

. . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor --

> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). In other words, a creditor may avoid disgorging an otherwise preferential payment if subsequent unsecured new value is given.

The three requirements of section 547(c)(4) include:

First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the creditor for the "new value" as of the date that it filed its bankruptcy petition. See In re Almarc Manufacturing, Inc., 62 B.R.

>   684, 686 (Bankr. N.D. Ill. 1986).  If a creditor satisfies these elements, it is entitled to set off the amount of the "new value" which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received.  <u>Id</u>.

<u>In re New York City Shoes, Inc</u>., 880 F.2d 679, 680 (3d Cir. 1989).

I have determined herein that the first element - that the payment is otherwise avoidable as a preference under section 547(b) - has been met.  I can also readily conclude that the third element has been met, i.e., that any "new value" received by the debtor from the defendant as of the date of the bankruptcy filing was not fully compensated by the debtor.  The only question remaining is the second element, whether new value was advanced by the defendant to the debtor <u>after</u> the preferential transfer.

The question remaining has two components:  when new value was advanced, and when the preferential transfer was made.  We know from the record that the new value from Showtime was advanced sometime between November 1 and November 30, 2004.  The amount due to the debtor as of November 1, 2004 was $244,402.11.  As of November 30, 2004, the outstanding indebtedness to the defendant had increased to $310,946.71.  There is no indication in the record that additional invoice services were

rendered after November 30, 2004.[4]

As to the date the preferential transfer occurred, the choice appears to be between the date of the check, which was November 23, 2004, the date of delivery, which is not known, or the date that the check was honored, December 23, 2004.  In New York City Shoes, in the context of section 547(c)(4), the Court of Appeals for the Third Circuit focused on the question of when a postdated check given by a debtor to a creditor should be deemed transferred for purposes of section 547(c)(4).  The court held that "there is a presumption that postdated checks are transferred for section 547(c)(4) purposes either on the date on the face of the check or on the date that the check clears the bank, as opposed to the date on which the check was delivered. . . . [T[his presumption can be rebutted if the creditor can demonstrate that the parties treated the transaction as though it were a cash transaction." 880 F.2d at 679.  In that case, "the date of transfer should be considered to be the date that the debtor delivered the check to the creditor." Id. The court distinguished the analysis for situations where the debtor

---

[4] In the trustee's response to the defendant's supplemental brief, there is mention of Invoice No. 5397 in the amount of $1,794, which was paid by the debtor during the 90 days preceding the filing.  This payment is not challenged as a preference.  The trustee's suggestion is that the defendant advanced new value in that amount, and that it may have been a contemporaneous exchange.

presents the creditor with a currently dated check. Although the court did not decide the section 547(c)(4) issue of when a transfer occurs in the case of a currently dated check, in dicta, the court cited favorably cases that have held that the delivery date of the check should control. In those cases, the court expressed the view that the "date of delivery" rule appears to serve the dual purposes of section 547(c)(4), including the opportunity "to continue to allow shaky companies to operate on an ordinary basis" and the need "to be fair to creditors who believed that they had been paid post-due debt and shipped goods in reliance." Id. at 683.[5]

The record presented is bereft of information regarding when the new value in the form of services was rendered by the defendant to the plaintiff. Nor do we know with precision when the check dated November 23, 2004 was actually delivered to the defendant. Because it is the defendant's burden to

---

[5] Following the issuance of the New York City Shoes case, the United States Supreme Court determined in Barnhill v. Johnson, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed. 2d 39 (1992) that in the context of section 547(b), in deciding when an alleged preferential transfer was made, the transfer made by check is deemed to occur on the date the check is honored. However, the Supreme Court, while not deciding the point, distinguished between a reading of the term "transfer" for section 547(b) purposes and a reading of the same term for section 547(c) purposes. The same distinction is drawn in New York City Shoes, 880 F.2d at 682 n.2. ("[W]e . . . note that many courts have held, and both parties agree, that the date a check is deemed transferred for purposes of section 547(b) does not have to be the same date that the same check is deemed transferred for purposes of § 547(c)(4).").

establish that it is entitled to a section 547(c)(4) exception, I look to the defendant to provide any additional factual information, by certification, regarding these points.  I request that the defendant provide such a certification, if available, by December 19, 2007.  A response may be submitted through January 7, 2008.  A final decision will then be rendered.

Dated:   December 3, 2007

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT